STATE OF NORTH CAROLINA v. THOMAS GLENN BAILEY

No. 250PA82

(Filed 3 November 1982)

**Constitutional Law § 32; Criminal Law § 101.4— right to impartial jury — contact with State's witness**

The Court of Appeals erred in finding no error in the trial judge's denial of defendant's motion to set aside the verdict of manslaughter which was based upon alleged misconduct of a sheriff in driving three jurors to a restaurant for an evening meal during a break in the jury deliberations since (1) the sheriff testified as a witness for the State in its case-in-chief, (2) the trial judge had cautioned the jurors not to associate themselves with anyone involved in the case, (3) extraordinary precautions had been taken to prevent the sheriff from having any contact with the jury, and (4) since, by gratuitously transporting the three jurors to the restaurant, the sheriff granted them a special "favor."

ON petition for discretionary review of an unpublished opinion of the Court of Appeals, 56 N.C. App. 642, 291 S.E. 2d 371 (1982), finding no error in the trial before *Llewellyn, J.,* at the 23 March 1981 Session of the NASH Superior Court.

Defendant Thomas Glenn Bailey was tried for the first-degree murder of Eugene Perry. The State presented seventeen witnesses, including Sheriff Brown, whose testimony tended to show that on 22 August 1980 defendant shot and fatally wounded Eugene Perry at the B & F Grocery, a gameroom-pool hall.

Defendant presented evidence of his good character and evidence which tended to show that he acted in self-defense when

he shot Eugene Perry. Defendant and two witnesses testified that Eugene Perry was leaving the B & F Grocery when defendant arrived. They testified that Eugene Perry threatened defendant saying: "You can go in, you big m--- f---, but you better not come out. I done shot you one time, and I'll kill you the next time," and that Eugene Perry had a shiny object in his hand. Defendant testified that Eugene Perry returned to the B & F Grocery later that evening and threatened him several times. Upon the final threat, defendant shouted, "I can't stand it no more," and shot Eugene Perry. Defendant was ordered to leave the B & F Grocery by manager Michael Bissette. He then went to his parents' home where he lived. He was arrested later that night after Eugene Perry died from the gunshot wound.

Other pertinent facts are hereafter set out in the opinion.

The jury returned a verdict of guilty of manslaughter. Defendant moved for the court to set aside the verdict due to contact between the jurors and a State's witness. This motion was denied and judgment was entered sentencing defendant to a term of imprisonment of not less than fourteen nor more than sixteen years. The Court of Appeals affirmed and defendant sought discretionary review by this Court. We allowed the petition on 12 May 1982.

*Rufus L. Edmisten, Attorney General, by Thomas B. Wood, Assistant Attorney General, for the State.*

*John E. Clark and Perry W. Martin for defendant-appellant.*

BRANCH, Chief Justice.

The sole question presented by this appeal is whether the Court of Appeals erred in finding no error in the trial judge's denial of defendant's motion to set aside the verdict. This motion was based upon alleged misconduct of Sheriff Frank Brown in driving three jurors to a restaurant for an evening meal during a break in the jury deliberations.

A motion for a new trial based on misconduct affecting a jury's deliberation is addressed to the sound discretion of the trial judge, and unless his ruling is clearly erroneous or an abuse of discretion, it will not be disturbed. *State v. Johnson*, 295 N.C. 227, 244 S.E. 2d 391 (1978); *State v. Sneeden*, 274 N.C. 498, 164

S.E. 2d 190 (1968). "The circumstances must be such as not merely to put suspicion on the verdict, because there was opportunity and a chance for misconduct, but that there was in fact misconduct. When there is merely matter of suspicion, it is purely a matter in the discretion of the presiding judge." *Lewis v. Fountain,* 168 N.C. 277, 279, 84 S.E. 278, 279 (1915). Nevertheless, we recognized in *State v. Sneeden, supra,* that "[c]ontacts between court officers and jurors, except as authorized by the court in appropriate circumstances, are not to be countenanced since no justification should be given for arousing suspicions as to the sanctity of jury verdicts." 274 N.C. at 503, 164 S.E. 2d at 194 (quoting 89 C.J.S. *Trial,* § 457(f) (1955)).

This Court has unequivocally held that a State's witness is disqualified to act as custodian or officer in charge of the jury in a criminal case, and when this occurs, prejudice is conclusively presumed. *State v. Macon,* 276 N.C. 466, 173 S.E. 2d 286 (1970); *Turner v. Louisiana,* 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed. 2d 424 (1965); *cf. State v. Taylor,* 226 N.C. 286, 37 S.E. 2d 901 (1946).

We are cognizant of the fact that the majority of our cases which have considered the question of misconduct between jurors and custodial officials involve communications. In these instances, the question of prejudice largely depended upon the nature of the communication. *State v. Sneeden, supra; State v. Johnson, supra; State v. Adkins,* 194 N.C. 749, 140 S.E. 806 (1927); *State v. Burton,* 172 N.C. 939, 90 S.E. 561 (1916); *Gaither v. Generator Co.,* 121 N.C. 384, 28 S.E. 546 (1897).

In *State v. Mettrick,* 305 N.C. 383, 289 S.E. 2d 354 (1982), prejudicial error was found where two of the State's principal witnesses, the sheriff and deputy sheriff, transported prospective jurors in buses from one county to another. Each officer was alone in the bus with the jurors for about three hours. There was no evidence of any conversations concerning the trial at any time during the transportation of the jury. Holding that the officers who drove the buses acted as custodians of the jury, a unanimous Court, speaking through Justice Mitchell, stated, in part:

> The integrity of our system of trial by jury is at stake. No matter how circumspect officers who are to be witnesses for the State may be when they act as custodians or officers in charge of the jury in a criminal case, cynical minds often will

leap to the conclusion that the jury has been prejudiced or tampered with in some way. If allowed to go unabated, such suspicion would seriously erode confidence in our jury system. . . .

> \*    \*    \*    \*

> In determining whether the officers who testified for the State were "custodians" or "officers in charge" of the jury as we employ those terms here, we look to factual indicia of custody and control and not solely to the lawful authority to exercise such custody or control. . . .

> In the present case, Sheriff Waddell was called to testify five times in the presence of the jury. He was alone with jurors in a bus for a total of at least three and one-half hours as he drove them at various times through the mountains. The same is true of Deputy Parsons who testified three times in the presence of the jury. The jurors, in fact, were in these law enforcement officers' custody and under their charge out of the presence of the court for protracted periods of time with no one else present. Without question, the jurors' safety and comfort were in the officers' hands during these periods of travel. We find that the sheriff and the deputy who were witnesses for the State also acted as custodians or officers in charge of the jury in the present case. Therefore, prejudice is conclusively presumed despite the fact that the evidence reveals no hint of malice or misconduct by the officers. The defendants are entitled to a new trial.

305 N.C. at 385, 386, 289 S.E. 2d at 356.

Although the instant case differs from *Mettrick* in that here the sheriff was in the presence of the jurors for a very short period of time, it is similar in that there was no evidence of prejudicial conversation in either case and that for the given period of time in each case the officers were performing an act of transporting the jurors for their comfort and accommodation. We do not conclude that *Mettrick* squarely controls the decision in this case or that Sheriff Brown actually acted as an officer in charge of the jury so as to permit a conclusive presumption of prejudice. We must therefore turn to the particular and peculiar facts of this case in order to determine whether defendant was denied a fair trial.

We summarize the pertinent facts. Sheriff Brown had testified as a witness for the State in its case-in-chief. Defendant relied solely upon self-defense and his own testimony was crucial. The sheriff testified to a custodial statement made by defendant, which if believed, would have completely destroyed defendant's testimony.

Immediately after the jury selection was completed, the trial judge cautioned the jurors as follows: "You are not to associate yourselves with anyone involved in this case, either as a party, as a lawyer, as a witness or as a judge." On at least nineteen other occasions, by similar language or by reference to prior instructions, the jurors were instructed in a similar manner. Finally, Sheriff Brown was in the courtroom during most of the course of this trial; and even had he not been, because of his long service as a police officer, he must have been familiar with the impropriety of a witness associating in any manner with a juror. For some reason, two superior court judges took extraordinary precautions to insure that the sheriff would have absolutely no contact with this jury. To that end, Judge Allsbrook, in denying a pretrial motion for change of venue, indicated that Sheriff Brown should not assume his usual duties of opening and closing court during the course of this trial and that he should not have any contact with the jurors who were to try this case. At trial Judge Llewellyn did permit the sheriff to sit with the district attorney during jury selection but, thereafter, required him to remove his chair to another part of the courtroom. He also made it very clear that the sheriff should not have *any* contact with the jury by not even allowing him to deliver a list of the jurors to the deputy who was the custodian of the jury.

We do not know whether it was the sheriff's personal popularity in Nash County, an inordinate desire to obtain a conviction or some other cause that prompted two superior court judges to take such extraordinary precautions to prevent Sheriff Brown from having any contact with the jury. We can only infer that whatever the reason, it was their purpose to guarantee that both defendant and the State receive a fair trial.

Upon this background, and while the jury was still deliberating upon their verdict, Sheriff Brown, in direct contravention of all of the court's precautions and cautionary instruc-

tions concerning contact with the jurors, initiated or permitted a situation which placed him in contact with three jurors. The jurors also acted in total disregard of the court's numerous instructions.

The probability of prejudice was more certain in this case than in *Mettrick.* In *Mettrick* the drivers were in effect chauffeurs who were carrying out their duties to transport jurors to and from the courthouse. Here Sheriff Brown, by gratuitously transporting the three jurors to the restaurant, granted them a special "favor." Certainly, this must have improved his image and strengthened his credibility in the eyes of the three jurors who were actually in the process of their deliberations. We further note that the jurors were not questioned as to whether their encounter with the Sheriff in any way affected their verdict. The action of Sheriff Brown and the jurors constituted misconduct which if "allowed to go unabated . . . would seriously erode confidence in our jury system." We therefore hold that such misconduct resulted in prejudicial error to defendant. This holding is limited to the particular and peculiar circumstances of this case and we wish to make it clear that we do not by this holding extend the rationale of our prior cases.

The decision of the Court of Appeals is reversed and for reasons stated there must be a new trial.

Reversed.