STATE v. JEUNE

[104 N.C. App. 388 (1991)]

---

STATE OF NORTH CAROLINA v. CHARLES WILSON JEUNE

No. 9027SC1329

(Filed 5 November 1991)

1. **Criminal Law § 318 (NCI4th)— rape and kidnapping—joinder of defendants denied—no prejudice**

    Although a defendant in a prosecution for rape and kidnapping contended that he was denied a fair trial because his brother was acquitted in a separate trial, defendant failed to include anything in the record from which it could be determined that the court abused its discretion by denying defendant's motion to consolidate.

    **Am Jur 2d, Trial § 1806.**

2. **Criminal Law § 483 (NCI4th)— bailiff as witness—new trial**

    A defendant in a prosecution for rape and kidnapping was granted a new trial where a State's witness served as bailiff during a portion of the trial. Although this case is factually similar to *State v. Macon,* 276 N.C. 466, to the extent that *Macon* may be construed as requiring a showing of actual prejudice, that requirement has been implicitly overruled by *State v. Mettrick,* 305 N.C. 383, and *State v. Wilson,* 314 N.C. 653. The deputy who testified here was a bailiff and

therefore an officer in charge of the jury; accordingly, prejudice to the defendant is conclusively presumed.

**Am Jur 2d, Trial § 942.**

**Propriety and prejudicial effect, in criminal case, of placing jury in charge of officer who is a witness in the case. 38 ALR3d 1012.**

Judge GREENE dissenting.

DEFENDANT appeals from judgments entered 13 August 1990 by *Judge John M. Gardner* in LINCOLN County Superior Court. Heard in the Court of Appeals 25 September 1991.

Defendant was indicted and convicted of first-degree rape and first-degree kidnapping. He was sentenced to life imprisonment for the rape conviction. The first degree kidnapping charge was arrested and the defendant was sentenced to thirty years imprisonment for second degree kidnapping.

Briefly stated, the State's evidence tended to show that on 13 January 1990 Mrs. Linda Ward and her husband, Mr. Jim Ward, drove from their home in Lincoln County to a boxing match, a "Tuff Man Contest," in Hickory. Before leaving to go to the contest Mrs. Ward consumed "a couple of mixed drinks." She also consumed "a couple of beers" at the contest. During the drive home, Mr. and Mrs. Ward got into an argument. Approximately one mile from their home Mr. Ward stopped the car, got out, opened the hood, disabled the vehicle, and began walking home. Mrs. Ward was unable to start the car and let it roll off to the side of the road. She then began walking home. A few minutes later a four door burgundy Nova automobile passed by her and turned around. The defendant was seated in the passenger seat and his brother, Frederick Jeune, was driving. The defendant offered Mrs. Ward a ride which she accepted. The two men then drove Mrs. Ward past her turnoff and to a field out in the country where they undressed her and raped her. Frederick Jeune then forced her to perform fellatio on him. Mrs. Ward then dressed and the defendant drove her to a convenience store and let her out. Mrs. Ward ran into the store and told the clerk "[p]lease call the police. I've just been raped." Mrs. Ward later identified the defendant, his brother, and the car.

The defendant and Frederick Jeune testified for the defense. Both men admitted having sexual relations with Mrs. Ward, but contended that the conduct was consensual.

The defendant testified that when he saw Mrs. Ward standing on the roadside, he asked Mrs. Ward if she wanted a ride home. She answered "yes" and got into the back seat of the car. A few minutes later Mrs. Ward asked the defendant to get into the back seat with her. He did. The two began hugging and kissing and Mrs. Ward began disrobing. The defendant asked his brother to pull the car over, which he did. The defendant then had sexual intercourse with Mrs. Ward. Afterwards, the defendant saw Frederick Jeune get into the back seat with Mrs. Ward.

Frederick Jeune testified that after the defendant got out of the back seat, Mrs. Ward asked him if he wanted oral sex. He said yes and Mrs. Ward performed fellatio upon him. The two then engaged in sexual intercourse.

Defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Clarence J. DelForge, III, for the State.*

*Brenda S. McLain for defendant-appellant.*

EAGLES, Judge.

I

[1] In his first assignment of error the defendant argues that the trial court committed prejudicial error by failing to grant his motion to join his trial with the trial of his brother, Frederick Jeune. We find no prejudicial error.

> It is a well settled rule of law in this jurisdiction that the decision whether to try the defendants separately or jointly is ordinarily within the sound discretion of the trial judge and, absent an abuse of that discretion, will not be overturned on appeal. *State v. Slade*, 291 N.C. 275, 229 S.E.2d 921 (1976); *State v. Brower*, 289 N.C. 644, 224 S.E.2d 551 (1976); *State v. Fox*, 274 N.C. 277, 163 S.E.2d 492 (1968).

*State v. Boykin*, 307 N.C. 87, 90, 296 S.E.2d 258, 260 (1982).

Here, the defendant contends that he was denied a fair trial because his brother was acquitted of the charges of raping and

kidnapping Mrs. Ward in a separate trial. However, the defendant has failed to include anything in the record from which we could determine that the trial court abused its discretion by denying the defendant's motion to consolidate the two trials. This assignment is overruled.

## II

**[2]** The defendant next argues that his rights under the Sixth and Fourteenth Amendments have been violated. Specifically, the defendant claims the trial court erred by failing to grant a mistrial on its own motion when a State's witness served as bailiff during a portion of the trial. We agree.

Initially, we note that the State argues that defendant's appeal on this issue should be dismissed because the defendant failed to properly preserve the question for appellate review. Assuming, *arguendo*, that the defendant failed to properly preserve this issue,

> [t]his Court may, . . . pass upon constitutional questions not properly raised below in the exercise of its supervisory jurisdiction. Rule 2 of the Rules of Appellate Procedure; *Rice v. Rigsby*, 259 N.C. 506, 131 S.E.2d 469 (1963).

*State v. Elam*, 302 N.C. 157, 161, 273 S.E.2d 661, 664 (1981). *See also State v. O'Neal*, 77 N.C. App. 600, 604, 335 S.E.2d 920, 923 (1985). In our discretion, we choose to address defendant's constitutional claims.

Deputy David Carpenter, an investigating officer, testified concerning the condition of the car in which the defendant and Mrs. Ward had intercourse. He testified that there were scuff marks on the "driver's side, rear passenger door window[,]" and that they "could be made by [a] small narrow [shoe] heel" like the one Mrs. Ward was wearing. He also testified that the back seat was displaced and that he found an earring underneath the back seat of the car. Mrs. Ward testified and identified the earring: "That's my earring I had on that night."

During the trial, Deputy Carpenter also acted as bailiff. After defense counsel brought this to the attention of the trial judge, the judge asked Deputy Carpenter what he had done. Deputy Carpenter told the judge that he had "held the gate open" for the jury; "opened the jury room door"; and "told them to take their seats and sit down." Deputy Carpenter also said that he

had acted as bailiff because he "was instructed by the sheriff to assist in the courtroom."

Though during trial defendant did not move for a mistrial, defendant argues that Deputy Carpenter's actions conveyed an appearance of impropriety which standing alone so affronts the traditional notions of due process and a fair trial that the defendant should be entitled to a new trial. Defendant relies on *State v. Mettrick*, 305 N.C. 383, 289 S.E.2d 354 (1982) and *State v. Wilson*, 314 N.C. 653, 336 S.E.2d 76 (1985). The State, however, argues the defendant is not entitled to a new trial and relies on the earlier Supreme Court decision in *State v. Macon*, 276 N.C. 466, 173 S.E.2d 286 (1970). After careful examination of these competing precedents, we agree with the defendant.

In *Macon*, two State witnesses, both Deputy Sheriffs, served as courtroom bailiffs over the defendant's objection. *Macon*, 276 N.C. at 470, 173 S.E.2d at 288. The Supreme Court stated, "a State's witness is disqualified to act as *custodian* or *officer in charge* of the jury in a criminal case. . . . Under such circumstances prejudice is conclusively presumed." *Id.* at 473, 173 S.E.2d at 290. However, after applying the facts of the case to the then existing case law, the Supreme Court held:

> The exposure of the jury to these bailiffs was brief, incidental, and without legal significance. Hence, defendant not only fails to show *actual prejudice* — he fails to show circumstances affording any reasonable ground upon which to attack the fairness of the trial or the integrity of the verdict. The only service of the bailiffs to the jurors was in "opening the door to send them out or call them in as occasion required." We hold on the facts in this record that defendant received a fair trial in a fair tribunal in keeping with basic requirements of Due Process. There is nothing to support the contention that his constitutional rights under the Sixth and Fourteenth Amendments have been violated.

*Id.*

Were *Macon* our only precedent our decision would be different, but twelve years later in *State v. Mettrick*, 305 N.C. 383, 289 S.E.2d 354 (1982), the Supreme Court again addressed the issue. In *Mettrick*, the Ashe County trial court ordered that a special venire of jurors be brought from another county. *Id.* at 384, 289

S.E.2d at 355. The Ashe County sheriff and one of his deputies transported the prospective jurors in two activity buses to Ashe County. After the jury was selected, the sheriff and his deputy continued to transport the jurors daily between counties. *Id.* Both officers were State's witnesses.

The Supreme Court stated:

> We have previously held that, where a witness for the State acts as a *custodian* or *officer in charge* of the jury in a criminal case, prejudice is conclusively presumed. *State v. Macon*, 276 N.C. 466, 473, 173 S.E.2d 286, 290 (1970); *Compare Turner v. Louisiana*, 379 U.S. 466, 13 L.Ed. 2d 424, 85 S.Ct. 546 (1965). In such cases the appearance of a fair trial before an impartial jury is as important as the fact of such a trial. The integrity of our system of trial by jury is at stake. No matter how circumspect officers who are to be witnesses for the State may be when they act as custodians or officers in charge of the jury in a criminal case, cynical minds often will leap to the conclusion that the jury has been prejudiced or tampered with in some way. If allowed to go unabated, such suspicion would seriously erode confidence in our jury system. For this reason we have adopted the rule that prejudice is conclusively presumed in such cases.

*Id.* at 385, 289 S.E.2d at 356.

After examining the "factual indicia of custody and control" the Supreme Court determined that the sheriff and his deputy "acted as custodians or officers in charge of the jury. . . ." *Id.* at 386, 289 S.E.2d at 356. This raised a conclusive presumption of prejudice despite the fact that the evidence presented no hint of malice or misconduct by the officers. *Id.* The Court ordered a new trial.

The issue was most recently revisited in Justice Meyer's opinion for a unanimous court in *State v. Wilson*, 314 N.C. 653, 336 S.E.2d 76 (1985). There, "[t]he prosecuting attorney's wife was a courtroom officer and was the bailiff in charge of the jury." *Id.* at 655, 336 S.E.2d at 76. During a break in jury deliberations, she engaged in friendly conversation with the jury after two of the jurors told her they had seen her riding to and from work with her husband. *Id.* at 655, 336 S.E.2d at 76-77. The bailiff told the court that she did not attempt to influence the jury at any

time. *Id.* at 655, 336 S.E.2d at 77. Ordering a new trial Justice Meyer restated this bright line rule:

> This Court has held that where the custodian or officer in charge of the jury in a criminal case is a witness for the State, prejudice to the defendant is conclusively presumed and he is entitled to a new trial. (Citations omitted.)

> * * *

> The State contends that this situation differs from that in *Mettrick*, because in *Mettrick* the close association between the law enforcement officers and the jurors gave them an opportunity to bolster their personal credibility *as witnesses* and thus directly influence the case, whereas here the bailiff was not a witness in the case. This argument, however, overlooks the underlying rationale of the *Mettrick* decision. There, we said the appearance of a fair trial before an impartial jury is as important as the fact that a defendant actually receives such a trial. *State v. Mettrick*, 305 N.C. at 385, 289 S.E.2d at 356. We find this reasoning to be equally applicable here. Our jury system depends on the public's confidence in its integrity. We must zealously guard against any actions or situations which would raise the slightest suspicion that the jury in a criminal case had been influenced or tampered with so as to be favorable to either the State or the defendant. Any lesser degree of vigilance would foster suspicion and distrust and risk erosion of the public's confidence in the integrity of our jury system. . . . We wish to emphasize that there is absolutely nothing in the record to remotely suggest that the bailiff actually attempted to influence the jury in any manner. However, whether any tampering or attempted tampering took place is irrelevant. It is the *appearance* of the *opportunity* for such influence that is determinative.

*Wilson*, 314 N.C. at 655-656, 336 S.E.2d at 77.

We acknowledge that *Macon* is factually similar to the instant case. There, as here, "[t]he only service of the bailiffs to the jurors was in 'opening the door to send them out or call them in as occasion required.'" *Macon*, 276 N.C. at 473, 173 S.E.2d at 290. Even so, we do not believe that *Macon* controls here.

In oral argument there were contentions that *Macon* requires a showing of actual prejudice in order to warrant a new trial.

STATE v. JEUNE

[104 N.C. App. 388 (1991)]

We note, however, *Macon* did not express such a requirement. In *Macon* the court stated:

> Hence, defendant not only fails to show *actual prejudice* — he fails to show circumstances affording any reasonable ground upon which to attack the fairness of the trial or the integrity of the verdict.

*Macon*, 276 N.C. at 473, 173 S.E.2d at 290. Nonetheless, to the extent that *Macon* may be construed as requiring a showing of actual prejudice, we believe that that requirement has been implicitly overruled by *Mettrick* and *Wilson*.

In oral argument contentions were also made that *Wilson* requires that a custodian or officer in charge of the jury be a *crucial* witness to raise a conclusive presumption of prejudice to the defendant. We disagree. In *Wilson* our Supreme Court stated:

> We hold that an immediate family member of either a prosecutor trying the case, a defendant, a defendant's counsel defending the case, or a crucial witness for either the prosecution or the defense is prohibited from serving as custodian or officer in charge of the jury in a criminal case.

*Wilson*, 314 N.C. at 656, 336 S.E.2d at 77. This holding addressed the issue of when, if ever, an immediate family member of a person involved in a criminal trial could serve as a custodian or officer in charge of the jury. The court held that an immediate family member of (1) a prosecutor trying the case, (2) a defendant, (3) a defendant's counsel defending the case, or (4) a crucial witness for the prosecution or the defense was prohibited from serving as custodian or officer in charge of the jury in a criminal case.

The rule governing witnesses serving as bailiffs was clearly stated in *Wilson*.

> [W]here the custodian or officer in charge of the jury in a criminal case is a witness for the State, prejudice to the defendant is conclusively presumed and he is entitled to a new trial. *State v. Mettrick*, 305 N.C. 383, 289 S.E.2d 354 (1982); *State v. Macon*, 276 N.C. 466, 173 S.E.2d 286 (1970). *See also Turner v. Louisiana*, 379 U.S. 466, 13 L.Ed. 2d 424 (1965).

*Wilson*, 314 N.C. at 655, 336 S.E.2d at 77.

The issue here, then, is whether Deputy Carpenter was a custodian or an officer in charge of the jury. It is clear and the State concedes that "the *Wilson* Court described the courtroom bailiff as being [an] officer in charge of the jury. . . ." Deputy Carpenter was a bailiff and therefore an officer in charge of the jury. Accordingly, prejudice to the defendant is conclusively presumed.

The State argues, however, that *Macon* controls here because it is factually similar to the instant case. This argument overlooks the recent extension made by the *Wilson* Court. If followed, the State's argument would require us to reach an incongruous result. Under *Wilson* an immediate family member of a person involved in a criminal trial is prohibited from serving as a courtroom bailiff, even though that person is not a witness and does not testify. *Wilson*, 314 N.C. at 656, 336 S.E.2d at 77. However, under the State's argument a person would be allowed to serve as courtroom bailiff despite the fact that he is also a witness and actually testifies. *Macon*, 276 N.C. at 473, 173 S.E.2d at 290. In short, the State's construction of our case law erroneously holds that an appearance of impropriety is not created by a witness serving as a bailiff, while an appearance of impropriety is created by a family member serving as a bailiff. This is at best inconsistent. The State's argument would promote the very appearance of impropriety that our decisions have been trying to eliminate. We reject this construction of our case law and relying on *Wilson* and *Mettrick*, we remand for a new trial.

III

We do not reach the defendant's remaining assignments of error.

New trial.

Chief Judge HEDRICK concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

I disagree with the majority's conclusion that our Supreme Court has adopted a *per se* rule that whenever a person serves as a bailiff in a criminal trial and testifies for the state in that trial "prejudice to the defendant is conclusively presumed."

As the majority has stated, our Supreme Court has enunciated a "bright line" rule which applies to this case.

> [W]here the custodian or officer in charge of the jury in a criminal case is a witness for the State, prejudice to the defendant is conclusively presumed and he is entitled to a new trial.

*State v. Wilson*, 314 N.C. 653, 655, 336 S.E.2d 76, 77 (1985); *State v. Mettrick*, 305 N.C. 383, 385, 289 S.E.2d 354, 356 (1982); *State v. Macon*, 276 N.C. 466, 473, 173 S.E.2d 286, 290 (1970). In *Macon*, our Supreme Court concluded that because the bailiffs in the defendant's trial did not act as custodians or officers in charge of the jury, the "defendant received a fair trial in a fair tribunal in keeping with basic requirements of Due Process." *Id.* at 473, 173 S.E.2d at 290. The Court determined that the bailiffs did not act as custodians or officers in charge of the jury because they "were not in the presence of the jurors outside the courtroom, had no communication at any time with them, and had no custodial authority over them." *Id.* Instead, the bailiffs only opened the door to send the jury out and called them back when required. *Id.*

In *Mettrick*, our Supreme Court refined the analysis employed by the Court in *Macon* stating that our courts should look to "factual indicia of custody and control," that is, "we must look to the relationship existing in fact between the witness for the State and the jurors in any given case in order to determine whether the witness has acted as a custodian or officer in charge of the jury so as to raise the conclusive presumption of prejudice." *Mettrick*, 305 N.C. at 386, 289 S.E.2d at 356. In *Mettrick*, the Court concluded that the sheriff and his deputy had acted as custodians or officers in charge of the jury because they had been alone with the jurors for hours as they drove the jurors in a bus through the mountains, they had custody over the jurors during "protracted periods of time with no one else present," and "the jurors' safety and comfort were in the officers' hands during these periods of travel." *Id.*

In *Wilson*, our Supreme Court, citing *Macon* and *Mettrick* for the "bright line" rule, expanded the scope of *Macon* and *Mettrick* by holding that the "bright line" rule also applies where the *custodian or officer in charge of the jury* is an immediate family member of the prosecuting attorney, the defendant, the defendant's counsel, or a crucial witness. *Wilson*, 314 N.C. at 655-56, 336 S.E.2d at 77. Under *Wilson*, if a bailiff is both the custodian or officer in charge of the jury *and* an immediate family member of one of

these trial participants, prejudice to the defendant is conclusively presumed, even though the bailiff does not testify for the state. In *Wilson*, the Court concluded that the bailiff, who was the prosecutor's wife, was also the officer in charge of the jury. *Id.* at 655, 336 S.E.2d at 76-77. She spoke to a juror during a break in the jury's deliberations. During that conversation, the juror told the bailiff that she had seen the bailiff driving home with the prosecutor after work. Another juror told the bailiff that she too had seen the bailiff and the prosecutor driving to work together. The bailiff then had a friendly conversation with those jurors about the fact that they were " 'nearly neighbors and didn't even know it.' " *Id.* at 655, 336 S.E.2d at 77. Contrary to the majority's assertion, the Court did not abandon the "factual indicia" analysis of *Mettrick* and assume that every bailiff is necessarily an officer in charge of the jury. Although implicitly done, the *Wilson* Court analyzed the bailiff's relationship with the juror consistent with the "factual indicia" analysis of *Mettrick* in reaching the conclusion that the bailiff was also an officer in charge of the jury. Because *Macon* and *Mettrick* have not been overruled, explicitly or implicitly, our courts must still use the "factual indicia" analysis to determine whether a bailiff has acted as a custodian or officer in charge of the jury.

As the majority acknowledges, the facts of *Macon* are virtually identical to the facts of this case. The record in this case shows that on one occasion during one day of a three-day trial, the bailiff "held the gate open" for the jury, "opened the jury room door," and "told them to take their seats and sit down." The bailiff had no other communication with any of the jurors. The relationship between the bailiff and the jurors does not compel a conclusion that the bailiff was the custodian or officer in charge of the jury. As in *Macon*, "[t]he exposure of the jury to . . . [the bailiff] was brief, incidental, and without legal significance." *Id.* at 473, 173 S.E.2d at 290.

Contrary to the majority's position, there is nothing inconsistent about the holdings in *Macon*, *Mettrick*, and *Wilson*. Because "the appearance of a fair trial before an impartial jury is as important as the fact that a defendant actually receives such a trial," our Supreme Court's primary goal in deciding *Macon*, *Mettrick*, and *Wilson* has been to maintain and promote public confidence in the integrity of our jury system by guarding "against any actions or situations which would raise the slightest suspicion that the

STATE v. JEUNE

[104 N.C. App. 388 (1991)]

jury in a criminal case had been influenced or tampered with so as to be favorable to either the State or the defendant." *Wilson*, 314 N.C. at 656, 336 S.E.2d at 77; *Mettrick*, 305 N.C. at 385, 289 S.E.2d at 356. Therefore, the defendant in a criminal trial is conclusively presumed to have suffered prejudice where (1) an immediate family member of either the prosecuting attorney, the defendant, the defendant's counsel, or a crucial witness serves as the custodian or officer in charge of the jury, *Wilson*, 314 N.C. at 656, 336 S.E.2d at 77, and where (2) "a witness for the State acts as a *custodian* or *officer in charge* of the jury . . . ." *Mettrick*, 305 N.C. at 385, 289 S.E.2d at 356. This is so because of the appearance that the jury has been influenced or tampered with in some way by the immediate family member/witness-custodian/officer in charge of the jury who, by definition, closely associates with the jury before or during the trial. *Gonzales v. Beto*, 405 U.S. 1052, 1056, 31 L.Ed.2d 787, 789 (1972); *Turner v. Louisiana*, 379 U.S. 466, 473, 13 L.Ed.2d 424, 429 (1965); *Wilson*, 314 N.C. at 656, 336 S.E.2d at 77; *Mettrick*, 305 N.C. at 385-86, 289 S.E.2d 356; *Macon*, 276 N.C. at 473, 173 S.E.2d at 290; Annotation, *Propriety And Prejudicial Effect, In Criminal Case, Of Placing Jury In Charge Of Officer Who Is A Witness In The Case*, 38 A.L.R.3d 1012, 1015 (1971) (general rule that mere supervision of jury by witness-bailiff without more is not improper). If, however, the bailiff is not the custodian or officer in charge of the jury, which essentially means that the bailiff does not closely associate with the jury before or during the trial, then the conclusive presumption of prejudice does not apply when the bailiff happens to be an immediate family member of a participant in the trial or testifies for the state.

Accordingly, I would not grant the defendant a new trial on the grounds asserted by the majority. Furthermore, because the defendant's remaining assignments of error are without merit, I find no error in the defendant's trial.

I dissent.