STATE OF NORTH CAROLINA v. CHARLES WILSON JEUNE

No. 496A91

(Filed 4 September 1992)

**1. Criminal Law § 506 (NCI4th)— witness serving as bailiff—not jury custodian—no presumption of prejudice**

A deputy sheriff who testified for the State and served as a bailiff did not act as custodian or officer in charge of the jury so as to require a conclusive presumption of prejudice where the evidence showed that the deputy had no contact with jurors outside the courtroom, he had no communication with any of the jurors except to tell them to take their seats, and the only service he performed for the jury was in holding the gate open and opening the jury room door.

**Am Jur 2d, Trial § 1501.**

STATE v. JEUNE

[332 N.C. 424 (1992)]

Propriety and prejudicial effect, in criminal case, of placing jury in charge of officer who is a witness in the case. 38 ALR3d 1012.

2. **Criminal Law § 506 (NCI4th) — bailiff in criminal trial — jury custodian — no per se rule**

The decision of *State v. Wilson*, 314 N.C. 653, did not create a per se rule that a bailiff in a criminal trial is necessarily a custodian or officer in charge of the jury for purposes of the conclusive presumption rule.

Am Jur 2d, Trial § 1501.

Propriety and prejudicial effect, in criminal case, of placing jury in charge of officer who is a witness in the case. 38 ALR3d 1012.

3. **Criminal Law § 314 (NCI4th) — joinder of charges against two defendants — necessity for motion by State**

N.C.G.S. § 15A-296(b)(2)a provides for joinder of charges against two or more defendants only upon motion of the State and thus provides no basis for a motion by defendant to compel joinder of his case for trial with that of his brother.

Am Jur 2d, Indictments and Informations § 210.

4. **Kidnapping § 1.2 (NCI3d) — removal of victim — defendant not driver — sufficiency of evidence**

There was substantial evidence that defendant removed the victim from one place to another to support his conviction of kidnapping, although defendant's brother was the driver of the car in which the victim was removed, where the evidence tended to show that defendant was a passenger in the car; defendant jumped over the front seat and restrained the victim in the back seat when she tried to escape; and the victim, restrained by defendant, was then driven to an open field where she was raped by both men.

Am Jur 2d, Abduction and Kidnapping § 32.

5. **Kidnapping § 1.3 (NCI3d) — first degree kidnapping — sexual assault — inclusion of fellatio in definition — absence of fellatio evidence — no plain error**

Any error in the trial court's instruction in a first degree kidnapping case defining the element of sexual assault as in-

STATE v. JEUNE

[332 N.C. 424 (1992)]

cluding rape and fellatio when there was no evidence that defendant engaged in fellatio with the victim was not plain error where the jury, in addition to finding defendant guilty of first degree kidnapping, also found defendant guilty of first degree rape, and therefore the jury would have found that the essential element of a sexual assault had occurred regardless of whether the trial judge included fellatio in his definition of sexual assault.

**Am Jur 2d, Abduction and Kidnapping §§ 9, 21.**

6. **Criminal Law § 496 (NCI4th)— review of testimony—denial of jury request—exercise of discretion**

The trial court did in fact exercise its discretion in denying the jury's request, after jury deliberations had begun, to review the testimony of a kidnapping and rape victim where the court first stated that a transcript of the victim's testimony was not available and then stated that the court "in its discretion" was denying the request because it would be difficult and time consuming for the court reporter to read back lengthy testimony.

**Am Jur 2d, Trial § 1577.**

7. **Kidnapping § 2 (NCI3d)— first degree kidnapping verdict— arrest of judgment—sentence for second degree kidnapping**

The trial court did not err in sentencing defendant for second degree kidnapping, although the jury was not instructed on second degree kidnapping and there was no specific adjudication of guilt as to that offense, where the jury found defendant guilty of first degree kidnapping and first degree rape; the trial court, consistent with double jeopardy principles, arrested judgment on the first degree kidnapping charge because the rape was the sexual assault used to elevate the kidnapping to first degree; and by finding defendant guilty of first degree kidnapping, the jury necessarily found proof beyond a reasonable doubt of each and every element of second degree kidnapping.

**Am Jur 2d, Abduction and Kidnapping § 34.**

APPEAL by the State of North Carolina pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 104 N.C. App. 388, 409 S.E.2d 919 (1991), vacating judgments

entered by *Gardner, J.*, on 13 August 1990 in Superior Court, LINCOLN County, and remanding for a new trial. The State's petition for temporary stay was granted by the Supreme Court on 12 November 1991. Defendant's petition for discretionary review as to additional issues was allowed by the Supreme Court on 9 January 1992. Heard in the Supreme Court on 13 April 1992.

*Lacy H. Thornburg, Attorney General, by Clarence J. Delforge, III, Assistant Attorney General, for the State.*

*Brenda S. McLain for defendant.*

FRYE, Justice.

Defendant, Charles Wilson Jeune, was convicted by a Lincoln County jury of first-degree rape and first-degree kidnapping for the 13 January 1990 abduction and rape of a Lincoln County woman. The Court of Appeals, by a 2-1 vote, ordered a new trial on both charges after concluding that a witness for the State acted as a custodian or officer in charge of the jury in violation of defendant's rights under the Sixth and Fourteenth Amendments of the United States Constitution. *State v. Jeune,* 104 N.C. App. 388, 409 S.E.2d 919 (1991). We disagree with the Court of Appeals and reverse. We also reject defendant's additional assignments of error and therefore remand this case to the Court of Appeals with instructions to remand to the trial court to reinstate defendant's convictions and sentences.

I.

FACTUAL BACKGROUND

The State's first witness was the victim, a twenty-four-year-old textile worker from Lincoln County. She testified that she and her husband drove to Hickory, North Carolina, on 13 January 1990 to watch a boxing match called a Tuff Man Contest. On their way home, the couple got into a shouting match. The victim's husband stopped the car about one mile from their home, opened the hood and disabled the vehicle. He then began walking home. The victim, after attempting to start the car, also began walking home and saw her husband accept a ride from a motorist in a passing car. It was cold outside. After walking a few minutes, a car stopped and two men offered the victim a ride. Both men were in the front seat: defendant was the passenger; his brother, Frederick Jeune, was driving. She accepted and got in the back seat. The

victim testified that when she told the men where to turn in order to take her home, "they just kept going down the road, and that's when I got scared."

The victim testified that she tried to jump out of the car when it stopped at an intersection, but defendant jumped in the back seat, "held me down and told me I wasn't going anywhere until they were through with me." The victim, who was wearing boots, said she kicked at the rear window on the driver's side, but the "more I fought, the madder the both of them got, and they — he told me, if you don't calm down, we're going to have to kill you." Defendant and his brother turned onto a dirt road and stopped in an open field. Frederick ripped the victim's panty hose off and noticed a tampon. He jerked it out and said, "The g-- d--- bitch is on the rag"; he threw the tampon out the window. Defendant then raped the victim. The victim testified that while she was being raped by defendant, Frederick opened the rear door and forced her to perform oral sex. After defendant raped the victim, Frederick raped her, she testified. The victim testified that both men said they had a gun and threatened to kill her if she did not do as she was told. She also said that defendant had a knife.

The men then drove the victim to a convenience store and let her out. The victim testified that she immediately ran inside the store and notified the police by telephone, providing them with a description of the car and her two assailants. A deputy sheriff responded to the call and told the victim he would take her to the hospital. Before arriving at the hospital, however, the deputy informed the victim that two suspects had been stopped; he drove by the stopped car and she identified the two men standing outside as the men who had attacked her. They were defendant and his brother.

Beatrice Potter, the clerk at the convenience store, testified that when the victim came into the store, "she was crying. She couldn't hardly hold her body still, she was shaking so bad. . . ."

Lincoln County Sheriff's Deputy Rick Spake, the deputy who responded to the call from the convenience store, testified that the victim "was crying heavily. She seemed to be upset, disoriented. I don't know, maybe nervous is the word. She was real fidgety, nervous type. Obviously upset." Deputy Spake also testified that he and a detective, following directions provided by the victim, found the open field where the victim said she was raped. Deputy

STATE v. JEUNE

[332 N.C. 424 (1992)]

Spake testified that he found a moist tampon on the ground. The tampon was introduced into evidence.

Sheriff's Deputy David Carpenter testified that he examined defendant's car and found a scuff mark on the driver's side rear window where the victim said she had kicked with her boots. Deputy Carpenter said he did not find a gun or knife in the car. No weapon was introduced at trial.

Both defendant and his brother testified that they were at defendant's house on 13 January 1990 playing Monopoly with defendant's wife and sister-in-law. Both were drinking. Defendant testified he had a "couple shots of liquor" and "probably about three beers." Around midnight, they left to buy more beer and get something to eat. On the way to the store, they saw a woman walking along the road and gave her a ride. Both testified that the woman was upset, told them about the fight with her husband, and said she did not want to go straight home. The three then drove around, eventually stopping in an open field where, according to both brothers, she willingly had sex with them; Frederick also testified that she asked him if he wanted to have oral sex, and he agreed.

Defendant testified that he never saw a tampon and offered no explanation as to how it got outside the car; on cross-examination, however, he acknowledged that the woman did not open any windows or doors while she was in the car. Both defendant and Frederick testified that the woman was not upset when she exited their car at the convenience store. In fact, both testified that the woman asked for their telephone numbers so they could see each other again. "She wasn't acting unusual," defendant testified, "she was acting like a normal person would act."

Defendant was indicted by a Lincoln County grand jury for first-degree rape, first-degree kidnapping, second-degree sexual offense, and crime against nature. The sexual offense and crime against nature charges were dismissed by the trial judge at the conclusion of the State's evidence. Defendant was convicted on 25 July 1990 of first-degree rape and first-degree kidnapping. On 13 August 1990, Judge Gardner sentenced defendant to life imprisonment for the first-degree rape conviction. Judge Gardner arrested judgment on the first-degree kidnapping conviction and sentenced defendant to thirty years in prison for second-degree kidnapping. The Court of Appeals ordered a new trial on both charges on the grounds

**STATE v. JEUNE**

[332 N.C. 424 (1992)]

that Deputy Carpenter, a witness for the State, had served as a bailiff during part of defendant's trial and was therefore an officer in charge of the jury. *Jeune*, 104 N.C. App. at 396, 409 S.E.2d at 923. Judge Greene dissented, concluding that Deputy Carpenter, although a bailiff, was not in charge of the jury. *Id.* at 399, 409 S.E.2d at 925 (Greene, J., dissenting). The State appealed based on Judge Greene's dissent. We granted the State's petition for a temporary stay. 330 N.C. 199, 412 S.E.2d 67 (1991). We also allowed defendant's petition for discretionary review as to additional issues. 330 N.C. 616, 412 S.E.2d 92 (1992).

II.

STATE'S APPEAL

[1]   After giving his instructions to the jury, Judge Gardner asked if there were any objections. The following colloquy then occurred:

MR. MORRIS [defense attorney]: No objections to the instructions, Your Honor. But it worries me that the deputy working with the jury now is a witness in the case. Opening the door for them and all. I don't think that should be.

THE COURT: What did he do particularly?

MR. MORRIS: Opening the door, and standing here as they are coming out.

THE COURT: Who did that?

MR. MORRIS: This gentleman sitting over here.

THE COURT: What is your name, sir?

MR. CARPENTER: David Carpenter.

THE COURT: What did you do, Mr. Carpenter?

MR. CARPENTER: I held that gate open, and opened the jury room door.

THE COURT: Did you have any communication with any of the jurors?

MR. CARPENTER: No, sir.

THE COURT: Did you say anything to them when you opened the door?

STATE v. JEUNE

[332 N.C. 424 (1992)]

MR. CARPENTER: No, when I opened the door I told them to take their seats and sit down.

Defendant argues, and the Court of Appeals held, that because Deputy Carpenter, a witness for the State, served as a bailiff, he was necessarily the custodian or officer in charge of the jury so as to require a new trial.

We have held consistently and unequivocally that where a witness for the State acts as custodian or officer in charge of the jury in a criminal trial, prejudice is conclusively presumed, and the defendant must have a new trial. *State v. Bailey*, 307 N.C. 110, 112, 296 S.E.2d 287, 289 (1982); *State v. Mettrick*, 305 N.C. 383, 385, 289 S.E.2d 354, 356 (1982); *State v. Macon*, 276 N.C. 466, 473, 173 S.E.2d 286, 290 (1970); *see also Turner v. Louisiana*, 379 U.S. 466, 13 L. Ed. 2d 424 (1965). In *State v. Wilson*, 314 N.C. 653, 336 S.E.2d 76 (1985), we extended this rationale to include situations in which an immediate family member of the prosecutor, defendant, defendant's counsel or a crucial witness serves as custodian or officer in charge of the jury. *Id.* at 656, 336 S.E.2d at 77. We adopted the rule that prejudice is conclusively presumed in such cases in order to safeguard the integrity of our system of trial by jury. As we said in *Mettrick*:

> No matter how circumspect officers who are to be witnesses for the State may be when they act as custodians or officers in charge of the jury in a criminal case, cynical minds often will leap to the conclusion that the jury has been prejudiced or tampered with in some way.

*Id.* at 385, 289 S.E.2d at 356.

To determine whether the State's witness (or an immediate family member as in *Wilson*) acted as a custodian or officer in charge of the jury, "we look to factual indicia of custody and control and not solely to the lawful authority to exercise such custody or control." *Mettrick*, 305 N.C. at 386, 289 S.E.2d at 356. Accordingly, in *Mettrick*, we awarded the defendant a new trial because two witnesses—the sheriff and a deputy—were alone with jurors for extensive periods of time outside the courtroom and clearly exercised custody and control over them. The sheriff and deputy drove prospective jurors in two activity buses from Caldwell County to Ashe County. *Id.* at 384, 289 S.E.2d at 355. The deputy also transported the jurors to lunch that day, and drove jurors

in one of the buses back to Caldwell County for the evening. *Id.* The following day, the sheriff transported eleven jurors and alternates from Caldwell County back to Ashe County. *Id.* Both the sheriff and deputy were alone with jurors in a bus for more than three hours. "Without question," we held, "the jurors' safety and comfort were in the officers' hands during these periods of travel." *Id.* at 386, 289 S.E.2d at 356.

By contrast, in *Bailey*, we held that prejudice could not be conclusively presumed where the sheriff, a witness for the State, drove three jurors to a restaurant for an evening meal during a break in jury deliberations. *Bailey*, 307 N.C. at 113, 296 S.E.2d at 289. Although we held that there was *actual* prejudice in that case, we specifically held that the sheriff had not acted as "an officer in charge of the jury so as to permit a conclusive presumption of prejudice." *Id.*

Before turning to the facts of this case, we note that neither defendant nor the Court of Appeals suggests that there was *actual* prejudice in this case. Defendant's argument, and the decision of the Court of Appeals, is based on the conclusive presumption rule. After a careful review of the transcript and record, we also find no evidence of actual prejudice to defendant.

Turning then to the facts of this case, we find a remarkable resemblance to the facts in *Macon*, a case in which this Court held that two sheriff's deputies/bailiffs, both witnesses for the State, did not act as custodians or officers in charge of the jury. We described the deputies' duties as follows:

Here, the deputies were not in the presence of the jurors outside the courtroom, had no communication at any time with them, and had no custodial authority over them. The exposure of the jury to these bailiffs was brief, incidental, and without legal significance. . . . The only service of the bailiffs to the jurors was in 'opening the door to send them out or call them in as occasion required.'

*Macon*, 276 N.C. at 473, 173 S.E.2d at 290. Because the deputies did not have custodial authority over the jury, we held prejudice could not be conclusively presumed. *Id.* Similarly, in this case, the undisputed evidence shows that Deputy Carpenter had no contact with jurors outside the courtroom, had no communication with any of the jurors, except to tell them to take their seats, and

had no custodial authority over them. The only service performed by Deputy Carpenter was in holding the gate open and opening the jury room door. As in *Macon*, the "exposure of the jury to these bailiffs was brief, incidental, and without legal significance." *See Macon*, 276 N.C. at 473, 173 S.E.2d at 290.

We hold that Deputy Carpenter did not act as custodian or officer in charge of the jury, as those terms are used in this context, and therefore prejudice cannot be conclusively presumed. Given that there is no evidence of actual prejudice to defendant, his rights under the Sixth and Fourteenth Amendments have not been violated, and he is not entitled to a new trial.

[2] Defendant argues, however, that the Court of Appeals was correct in its implicit holding that this Court, in *Wilson*, created a per se rule that whenever a person serves as a bailiff in a criminal trial, she or he is necessarily an officer in charge of the jury for purposes of the conclusive presumption rule. *See Jeune*, 104 N.C. App. at 396, 409 S.E.2d at 923. Although *Wilson* may be read to support such a proposition, it was not our intention to create such a per se rule. In *Wilson*, our attention was focused on a series of conversations between jurors and the wife of the prosecutor, who was serving as the bailiff. *See Wilson*, 314 N.C. at 655, 336 S.E.2d at 76-77. It was because of these "friendly conversation[s]" that we awarded the defendant a new trial. *Id.* at 655, 336 S.E.2d at 77. We also extended the conclusive presumption rule of *Macon*, *Bailey* and *Mettrick* to include situations in which an immediate family member of certain key players in a criminal trial serves as custodian or officer in charge of the jury. *Wilson*, 314 N.C. at 656, 336 S.E.2d at 77. However, it is incorrect to read *Wilson* for the proposition that a bailiff in a criminal trial is *necessarily* a custodian or officer in charge of the jury so as to require a conclusive presumption of prejudice.

III.

DEFENDANT'S ASSIGNMENTS OF ERROR

[3] Defendant argues in his first assignment of error that he was denied a fair trial because the trial judge rejected his motion to consolidate his trial with the trial of his brother, Frederick. According to defendant's brief, Frederick was acquitted in another trial of the same crimes for which defendant was convicted. This acquittal, defendant argues, demonstrates that "in some way the judicial

system has failed." Defendant's solution to this perceived "failure" is for this Court to award him a new trial. We disagree.

First, defendant calls our attention to the fact that one of the statutory bases for joining charges against two or more defendants for trial is that each defendant is charged with accountability for each offense. *See* N.C.G.S. § 15A-926(b)(2)a (1988). Defendant notes that both he and his brother were charged with the rape and kidnapping of the victim and that their defenses were not antagonistic. However, we note that the statute specifically provides only for joinder of charges against two or more defendants, as distinguished from joinder of two or more charges against the same defendant, upon motion of the State. The pertinent portion of the statute provides:

> (2) Upon written motion *of the prosecutor*, charges against two or more defendants may be joined for trial:
>
>> a. When each of the defendants is charged with accountability for each offense[.]

N.C.G.S. § 15A-926(b)(2) (1988) (emphasis added). Thus, the statute provides no basis for a motion by defendant to compel joinder of his case for trial with that of his brother. This assignment of error is rejected.

[4] Next, defendant argues that the trial judge erred by failing to dismiss the charge of first-degree kidnapping because of insufficient evidence that defendant removed the victim from one place to another. Again, we disagree.

The rules governing motions to dismiss in criminal cases are well settled and familiar. *State v. Faison*, 330 N.C. 347, 368, 411 S.E.2d 143, 149 (1991) (and cases cited therein). Simply put, a motion to dismiss should be allowed when, viewing the evidence in the light most favorable to the State, the State fails to present substantial evidence of each essential element of the crime charged and of the defendant being the perpetrator of the crime. *Id.* If the evidence will permit a reasonable inference that the defendant is guilty of the crime charged, the trial judge should allow the case to go to the jury. *Id.*

The trial judge in this case correctly instructed the jury that in order to convict defendant of first-degree kidnapping, the State must prove, *inter alia*, that "[d]efendant unlawfully removed a per-

son from one place to another." Defendant's argument, essentially, is that he cannot be convicted of first-degree kidnapping because *he* did not drive the car to the location where the victim was raped. The undisputed evidence is that defendant's *brother* was the driver of the car; thus, argues defendant, there was insufficient evidence that he, the passenger in the car, removed the victim from one place to another. This argument strains credulity. Of course, only one person can drive a car at any given time, but that does not mean that only one person can participate in the unlawful removal of a person by vehicle. In this case, viewed in the light most favorable to the State, there was substantial evidence that it was *defendant* who jumped over the front seat of the car and restrained the victim when she tried to escape. According to the victim's testimony, it was *defendant* who "held me down and told me I wasn't going anywhere until they were through with me." The victim, restrained by *defendant*, was then driven to an open field where, according to her testimony, she was raped by both men. Certainly, the trial judge did not err by concluding there was substantial evidence that defendant had removed the victim from one place to another. This assignment of error is without merit.

[5]   In his third assignment of error, defendant argues the trial judge committed plain error when instructing the jury on first-degree kidnapping. The trial judge's instruction for first-degree kidnapping reads, in pertinent part:

> In Case Number 90 CRS 336, the Defendant has been accused of First Degree Kidnapping. For you to find the Defendant guilty of First Degree Kidnapping, the State must prove five things beyond a reasonable doubt.
>
> . . . .
>
> And Fifth, that the person had been sexually assaulted. The sexual assault includes rape <u>and engaging in fellatio by force and against her will. Fellatio is described as follows, as any touching by the lips or tongue of one person and the male sex organ of another.</u>

(Emphasis added.) Defendant argues it was improper to include the underlined portion of the instruction because there was no evidence that defendant engaged in an act of fellatio with the

victim; indeed, the charges of second-degree sexual offense and crime against nature were dismissed by the trial judge because of insufficient evidence at the close of the State's evidence.

Defendant acknowledges that there was no objection at trial to the challenged instruction and thus any error must be reviewed under the plain error rule. *See* N.C. R. App. P. 10(b)(2), (c)(4). Under the plain error rule, defendant can only prevail if "it can be fairly said 'the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.'" *State v. Black*, 308 N.C. 736, 740-41, 303 S.E.2d 804, 806-07 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)); *accord State v. Robinson*, 330 N.C. 1, 409 S.E.2d 288 (1991). Assuming error, defendant cannot demonstrate that this jury instruction had a probable impact on the jury's verdict.

The jury, in addition to finding defendant guilty of first-degree kidnapping, also found defendant guilty of first-degree rape. The challenged instruction specifically defined sexual assault as including rape. Therefore, the jury would have found that a sexual assault occurred—satisfying the fifth essential element for first-degree kidnapping—regardless of whether the trial judge included fellatio in his definition of sexual assault. This assignment of error is rejected.

[6] In his fourth assignment of error, defendant argues that the trial judge erred by refusing to exercise discretion in denying the jury's request, after jury deliberations had begun, to review the victim's testimony.

If the jury, after retiring for deliberations, asks to review a witness' testimony, the decision whether to allow the review rests within the discretion of the trial judge. *State v. Eason*, 328 N.C. 409, 451, 402 S.E.2d 809, 821 (1991); *State v. Lang*, 301 N.C. 508, 510, 272 S.E.2d 123, 124 (1980). There is error when the trial judge refuses to exercise discretion in the erroneous belief that he or she has no discretion as to whether to allow a review of testimony. *Lang*, 301 N.C. at 510, 272 S.E.2d at 125. Defendant argues that Judge Gardner failed to exercise his discretion in denying the jury's request. Defendant is mistaken. When asked by the jury to "hear [the victim's] complete testimony," Judge Gardner responded:

STATE v. JEUNE

[332 N.C. 424 (1992)]

All right, ladies and gentlemen of the jury, a transcript of [the victim's] testimony is not available. It would be difficult and time consuming for the court reporter to read back lengthy testimony, so the Court, *in its discretion*, is DENYING your request to hear the testimony of [the victim]. You are to base your decisions in this case on your recollection of the evidence as it was presented at trial, so you may retire to the jury room and resume your deliberations, please.

(Emphasis added.) Clearly, Judge Gardner exercised discretion in denying the jury's request. We therefore reject this assignment of error.

[7] In his final assignment of error, defendant argues that the trial judge erred by sentencing him for second-degree kidnapping. We disagree.

The jury found defendant guilty of first-degree kidnapping. First-degree kidnapping differs from second-degree kidnapping in that the former includes the following essential element not present in the latter: "the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted." N.C.G.S. § 14-39(b) (1986). All other essential elements for first- and second-degree kidnapping are identical. *See* N.C.G.S. § 14-39(a), (b).[1] Thus, someone properly found guilty of first-degree kidnapping is *necessarily* guilty of second-degree kidnapping. *State v. Coats*, 100 N.C. App. 455, 460, 397 S.E.2d 512, 516 (1990), *disc. rev. denied*, 328 N.C. 573, 403 S.E.2d 515 (1991).

The trial judge, consistent with double jeopardy principles enunciated by this Court, arrested judgment on the first-degree kidnapping charge because a "defendant may not be separately punished for the offenses of first degree rape and first degree kidnapping where the rape is the sexual assault used to elevate kidnapping to first degree." *State v. Mason*, 317 N.C. 283, 292,

---

1. The trial judge correctly instructed the jury that in order to find defendant guilty of first-degree kidnapping, jurors must find that the State had proven the following five things beyond a reasonable doubt: (1) that defendant unlawfully removed a person from one place to another; (2) that the person did nòt consent to this removal; (3) that defendant removed that person for the purpose of facilitating his commission of rape; (4) that this removal was a separate and complete act independent of and apart from the rape; and (5) that the person had been sexually assaulted. Only the fifth element separates the crimes of first-degree and second-degree kidnapping.

STATE v. JEUNE

[332 N.C. 424 (1992)]

345 S.E.2d 195, 200 (1986); *accord State v. Whittington*, 318. N.C. 114, 347 S.E.2d 403 (1986); *State v. Freeland*, 316 N.C. 13, 340 S.E.2d 35 (1986). Defendant argues, however, that the trial judge erred by sentencing defendant for second-degree kidnapping because the jury was not instructed on second-degree kidnapping, and there was no specific adjudication of guilt as to that offense.

We find no merit in defendant's argument. As explained above, by finding defendant guilty of first-degree kidnapping, the jury necessarily found him guilty of second-degree kidnapping. By its verdict, the jury found proof beyond a reasonable doubt of *each and every element* of second-degree kidnapping. The trial judge therefore did not err by sentencing defendant for second-degree kidnapping.

We note that this Court, albeit implicitly, decided this issue six years ago in *State v. Mason*, 317 N.C. 283, 345 S.E.2d 195. In that case, the trial judge erroneously sentenced the defendant for both first-degree kidnapping and first-degree rape. A review of the record in that case reveals that the trial judge — like Judge Gardner in this case — did not instruct the jury on second-degree kidnapping, and the jury in that case — like the jury in this case — did not find the defendant guilty of second-degree kidnapping. We remanded for a new sentencing hearing with the following instructions: "The trial court may arrest judgment on the first degree kidnapping conviction and *resentence for second degree kidnapping*, or it may arrest judgment on the rape conviction." *Id.* at 292-93, 345 S.E.2d at 200 (emphasis added). Defendant's assignment of error is rejected.

## IV.

### SUMMARY

In sum, we reverse the decision of the Court of Appeals granting defendant a new trial. We also reject defendant's assignments of error. This case is therefore remanded to the Court of Appeals with instructions to remand to the trial court to reinstate defendant's convictions and sentences.

Reversed and remanded.